613 A.2d 654

**MERIDIAN TRUST COMPANY, Mildred H. Arner and Barbara J. Arner, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, Respondent. (Three Cases)**

Commonwealth Court of Pennsylvania.

Argued April 10, 1992.

Decided Aug. 6, 1992.

Sidney D. Kline, Jr., for petitioners.

Ronald H. Skubecz, Sr. Deputy Atty. Gen., for respondent.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Meridian Trust Company (Meridian), Mildred H. Arner[1] and Barbara J. Arner (collectively, petitioners) appeal from orders of the Board of Finance and Revenue (Board) which denied their petitions for relief.

The relevant facts which we take from the stipulation of facts filed by the parties and which we hereby adopt[2] are as follows: William H. Arner (Decedent) died on January 15,

1. Mildred H. Arner and Meridian Trust Company are the co-executors of the estate of William H. Arner, deceased. Mildred H. Arner is the decedent's widow.

2. This case is heard de novo by the Commonwealth Court. *See* Pa. R.A.P. 1571. We note that no material factual disputes are outstanding; only legal questions are presented for our review.

1988. Prior to his death, Decedent was the owner of three properties located in Berks County known as the Arner Family Restaurants. Under the terms of Decedent's will, dated August 18, 1982, and codicil, dated April 10, 1987, Barbara J. Arner, the Decedent's daughter, was granted an option to purchase these properties. By letter dated May 18, 1988, Barbara Arner exercised the option and on January 13, 1989, executed an agreement of sale; settlement was held on May 18, 1989. The total cash consideration paid by Barbara Arner for the three properties was $1,731,191.00.[3] In the three Statement of Value forms filed with the deeds, Meridian claimed an exclusion from the realty transfer tax imposed by Section 1102–C of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8102–C.[4]

On July 28, 1989, the Department of Revenue (Department) mailed to Petitioners Notices of Realty Transfer Tax Due claiming that tax and interest was owing on the transfer of each of the properties.[5] On October 23, 1989, with respect to each property transferred, a petition for redetermination of tax was filed with the Board of Appeals of the Department. In late February, 1990, the Board of Appeals issued a decision

3. The individual properties were priced as follows:

9th and Exeter Streets, Reading ............................ $375,236.00

2101 Howard Boulevard, Reading .......................... $392,895.00

714 Bern Road, Wyomissing ............................... $963,060.00

4. Section 1102–C was added by Section 4 of the Act of May 5, 1981, P.L. 36. Section 1102–C provides, in pertinent part:

> Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof ... a State tax at the rate of one per cent of the value of the real estate represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days of acceptance of such document....

5. The amount of tax and interest claimed for each property is as follows:

9th and Exeter, Reading ........................................$3,847.23

2101 Howard Boulevard, Reading ..............................$4,028.29

1714 Bern Road, Wyomissing .................................$9,874.10

and order with regard to each of the properties sustaining the determination of the Department that the Realty Transfer Tax was due. The Board of Appeals based its determination on its opinion that Section 1102–C.3(7) of the Code, 72 P.S. § 8102–C.3(7),[6] did not excuse Meridian's tax liability. That Section provides:

The tax imposed by section 1102–C shall not be imposed upon:

. . . .

(7) A transfer for no or nominal actual consideration of property passing by testate or intestate succession from a personal representative of a decedent to the decedent's devisee or heir.

Petitioners then appealed to the Board of Finance and Revenue on May 23, 1990. By orders dated October 30, 1990, the Board of Finance and Revenue sustained the action taken by the Board of Appeals. Appeal to this Court followed.[7]

■ On appeal to this Court, Petitioners argue that the transfer of the properties is excluded from tax by reason of Section 1102–C.3(6) of the Code, 72 P.S. § 8102–C.3(6). That Section provides as follows:

The tax imposed by section 1102–C shall not be imposed upon:

. . . .

(6) A transfer between husband and wife ... between parent and child or the spouse of such child, between brother or sister or spouse of a brother or sister and brother or sister or the spouse of a brother or sister and between a grandparent and grandchild or the spouse of such grandchild, except that a subsequent transfer by the grantee within one year shall be subject to tax if the grantor were making such transfer.

**6.** Section 1102–C.3 was added to the Code by Section 11 of the Act of July 2, 1986, P.L. 318.

**7.** On December 14, 1990, Meridian paid the taxes claimed to be due the Department, together with interest accrued thereon through December 15, 1990. The total amount remitted was $20,292.54.

Petitioners argue that this Section applies to all intra-family transfers regardless of the form of the transfer or whether the transfer involves consideration.

 We agree that, by its terms, Section 1102–C.3(6) applies to intra-family transfers without regard to whether consideration was given. The transfer in the instant case, however, cannot properly be characterized as an intra-family transfer. Under the terms of the codicil, Barbara Arner was given an option to purchase the properties. Upon the exercise of that option, the properties were transferred from Meridian and Mildred H. Arner *as co-executors of a Decedent's estate* to Barbara Arner. Thus, no direct transfer between a parent and a child was effected. Simply stated, the estate of William H. Arner, deceased, is not the parent of Barbara Arner.

Petitioners contend that a transfer made pursuant to the exercise of an option is a direct transfer between family members and, in support, cite *Dilworth's Estate*, 243 Pa. 475, 90 A. 356 (1914), and *France Estate*, 352 Pa. 522, 43 A.2d 139 (1945).

In *Dilworth's Estate,* the decedent granted to his brothers and sisters an option to purchase certain shares in a copartnership; the remainder of the estate was bequeathed to his wife. Following decedent's death, the surviving brother and sister and the issue of the deceased brother and sister elected to exercise the option and tendered payment to the wife who was also the executrix. The wife refused to accept payment alleging that she took an absolute interest in the copartnership. On appeal, the Supreme Court considered the effect of the grant of the option upon the bequest to the wife. The Court first determined that the bequest to the wife was made subject to other terms and conditions of the will. The Court then concluded that election to accept the option in accordance with the terms and conditions of the will vested equitable title in the purchaser with a right to demand transfer of the legal title by the executrix. The Court further concluded that "[t]he 'option to purchase' was a *bequest,* and, when accepted, title to the stock related back to the inception of the will, and became as absolute *as though there had been a direct bequest*

in the first instance subject to the payment of a specified sum." *Dilworth's Estate*, 243 Pa. at 481, 90 A. at 358. (Emphasis added.)

In *France Estate*, the decedent established a trust to distribute income to certain named beneficiaries for a period of ten years from the residue of his estate. The will provided that decedent's son was to be given an option to purchase shares of stock upon the death of the decedent's wife. The decedent's wife elected to take against the will rather than accept the provisions of the will. On appeal, the court considered whether the wife's election to take against the will accelerated the remainder interests. The court concluded that only the son's interest in the estate was accelerated. The court then opined, relying on *Dilworth's Estate*, that the option to buy was a direct gift of the property itself and directed that the son, as a specific *legatee*, be made whole before the residue and remainder was divided. Accordingly, the court granted to the son a ninety day period in which to exercise the option.

Neither *Dilworth's Estate* nor *France Estate* concerned the transfer of real estate; rather, they involved the transfer of personal property. Thus, these cases do not support the proposition that a transfer of real property made pursuant to the exercise of an option is a direct transfer of real property for purposes of Section 1102–C.3(6).

▮ Petitioners next argue that Section 1102–C.3(7) must be read in conjunction with Section 1102–C.3(6). When read together, Petitioners argue, Section 1102–C.3(7) exempts from taxation transfers of real estate even for consideration if those transfers are, by option or otherwise, to such family member as is exempted from taxation by Section 1102–C.3(6).

In the absence of case law construing the above-mentioned Sections, we turn to the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. §§ 1501–1991. Of particular relevance is the provision in the Act which states that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921(b). The plain language of Section 1102–C.3(7) exempts from taxation only those transfers from a personal representative to a decedent's devisee or heir which are made for no or nominal consideration. In the appeal before us the actual consideration for the three parcels of real estate was $1,731,191. That sum is not nominal and this Court is not free to engraft additional verbiage upon a Section that is clear and unambiguous. *Black v. Billy Penn Corp.*, 72 Pa.Commonwealth Ct. 628, 457 A.2d 192 (1983). Had the General Assembly intended to exempt from taxation transfers made for consideration from a personal representative to certain family members, it could have so provided.

Based on the above discussion, we hold that the Board did not err in sustaining the imposition of realty transfer tax upon the subject properties.[8] Accordingly, we enter judgment in favor the Commonwealth.[9]

## ORDER

### (No. 401 F.R. 1990)

NOW, August 6, 1992, judgment is entered in favor of the Commonwealth in the amount of $3,752.36 plus appropriate interest and will become final unless exceptions are filed within 30 days of the entry of this Order pursuant to Pa. R.A.P. 1571(i).

## ORDER

### (No. 402 F.R. 1990)

NOW, August 6, 1992, judgment is entered in favor of the Commonwealth in the amount of $3,928.94 plus appropriate interest and will become final unless exceptions are filed

8. Because we have concluded that a transfer of property pursuant to the grant of an option in a will is not a direct transfer of property, we need not consider Meridian's additional argument that the regulations adopted by the Department conflict with the exclusions enunciated in Section 1102–C.3.

9. Of course, the judgment entered by this Court's order will be offset by the amount of tax already paid by Petitioners.

578

within 30 days of the entry of this Order pursuant to Pa. R.A.P. 1571(i).

## ORDER

(No. 403 F.R. 1990)

NOW, August 6, 1992, judgment is entered in favor of the Commonwealth in the amount of $9,630.60 plus appropriate interest and will become final unless exceptions are filed within 30 days of the entry of this Order pursuant to Pa. R.A.P. 1571(i).